FILED
2026 Aug-03  AM 10:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOMENEQUE PERRY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:25-02053-MHH** |
| | } | |
| **AARON SIMS, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Domeneque Perry has sued three City of Irondale officials—City Councilman Aaron Sims, City Attorney April B. Danielson, and Mayor James D. Stewart, Jr.,—for alleged failures to respond appropriately to her communications and requests.  Ms. Perry has filed second and third amended complaints (Docs. 8, 18), and twenty-four motions or notices, (Docs. 12, 13, 14, 15, 16, 17, 20, 21, 22, 23, 25, 27, 29, 30, 31, 32, 34, 35, 36, 37, 38, 39, 40, 41).  This order addresses Ms. Perry's pending filings.  The Court begins this opinion with the legal standard that governs a district court's review of a *pro se* complaint under 28 U.S.C. § 1915.  Then, consistent with that standard, the Court summarizes Ms. Perry's factual allegations in the light most favorable to her.  The Court then considers whether Ms. Perry has stated a valid claim for relief in her complaints.  Finally, the Court addresses Ms. Perry's motions.

\*\*\*

Under 28 U.S.C. § 1915(e)(2)(B)(i)–(ii), a federal court must dismiss a *pro se* action that "is frivolous or malicious" or "fails to state a claim on which relief may be granted." When reviewing a *pro se* complaint pursuant to § 1915, a district court must hold complaints written by *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022). Though a district court must be lenient in its review of a *pro se* pleading, a district court "cannot act as *de facto* counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citation omitted). Generally, a district court accepts the factual allegations in a *pro se* complaint as true and construes the allegations in the light most favorable to the plaintiff, but a court must not accept unsupported legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts a plaintiff alleges "must allow [the Court] to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Jastram v. NextEra Energy, Inc.*, 161 F.4th 693, 706 (11th Cir. 2025) (quoting *Iqbal*, 556 U.S. at 678).

\*\*\*

In her complaints, Ms. Perry alleges that she has requested official proclamations and funding from City of Irondale officials, and the officials denied or ignored her requests. For example, on December 1, 2024, Ms. Perry asked the

2

City of Irondale to issue a military and birthday proclamation for her daughter, an active-duty member of the U.S. Air Force stationed in Ramstein, Germany. (Doc. 18, p. 3, 9, ¶¶ 1, 67). Ms. Perry's daughter's birthday was in late December. (Doc. 18, p. 3, ¶ 6). Ms. Perry sent additional messages to Irondale officials but did not receive a substantive response until January 12, 2025, when City Councilman Aaron Sims responded via email. (Doc. 18, pp. 3–4, ¶¶ 2–9). According to Ms. Perry, Mr. Sims explained that he had not seen Ms. Perry's email earlier because he was travelling and not replying to email messages, and he indicated that Ms. Perry's request was not "feasible or warranted." (Doc. 18, p. 4, ¶ 12). Councilman Sims "express[ed] his [own] struggles with being heard about . . . military recognition" and asked Ms. Perry "for her support on future military recognitions." (Doc. 18, p. 4, ¶ 12).[1]

On May 18, 2025, Ms. Perry requested a $5,000 donation from Irondale to sponsor her children's picture book, *The Brave Little Panther*, and a related nonprofit Ms. Perry had formed. (Doc. 18, pp. 4–5, ¶¶ 15–19). Ms. Perry included an invitation to her book signing in Birmingham. (Doc. 18, pp. 5–6, ¶¶ 18, 32).[2] Councilman Sims denied the request for a donation, saying that it would not be an

---

[1] The quotes above and below are from Ms. Perry's summaries of the emails.

[2] It is not entirely clear whether Ms. Perry requested the donation to finance the book signing, but her account of the defendants' responses seems to indicate that the defendants interpreted Ms. Perry's request that way.

3

appropriate "use of Irondale public funds." (Doc. 18, p. 5, ¶ 20). Ms. Perry then reached out to Sherry Berry, the director of the Irondale Chamber, asking what "the protocol [was] to receive the $5,000 to The Brave Little Panther nonprofit." (Doc. 18, p. 6, ¶ 29). Ms. Berry "sent a formal denial stating that the request had been denied due to it not meeting their criteria, . . . building community and education." (Doc. 18, p. 6, ¶ 30). In June 2025, Ms. Perry requested reconsideration, and Councilman Sims explained that Irondale could not fund her book signing because it was not in Irondale, and Irondale funds could only "service contract[s] that benefit[] the citizens of Irondale." (Doc. 18, p. 6, ¶¶ 31–32).[3]

On July 3, 2025, Ms. Perry submitted a "service agreement proposal" that asked Irondale to pay her $49,980 for providing "500 books for each elementary and middle school . . . at $24.99 per book." (Doc. 18, p. 3, ¶ 33). On July 14, 2025, Councilman Sims informed Ms. Perry that this request would need to be presented at a public meeting of Irondale's city council. (Doc. 18, p. 6, ¶ 35). Ms. Perry asked to have her request placed on the agenda for the next meeting on July 15. (Doc. 18,

---

[3] Between Ms. Perry's initial and renewed donation requests, Ms. Perry sent two emails to Irondale's city council about Irondale's finances. (Doc. 18, pp. 5–6, ¶¶ 22–28). The first email referenced allegations in the news that Irondale was spending too much too quickly on unprofitable investments. (Doc. 18, pp. 5–6, ¶¶ 22–25). In her second email, Ms. Perry referenced an FBI report, but it is unclear whether Ms. Perry submitted a report to the FBI or if Ms. Perry learned about an FBI report through the news. (Doc. 18, p. 5, ¶¶ 26–27). Ms. Perry requested documents about the city's finances or the FBI report, and Councilman Sims denied the request, stating "that the city can't provide documents that do not exist." (Doc. 18, p. 5, ¶ 27).

p. 6, ¶¶ 3–36).

April Danielson, an attorney for Irondale, replied to this request. (Doc. 18, p. 7, ¶¶ 37–38). Ms. Danielson explained that the deadline to add agenda items for the July 15 meeting had passed and that the earliest the city council could consider Ms. Perry's request would be at the August 5 city council meeting. (Doc. 18, p. 7, ¶¶ 37–41). Ms. Perry asked for her request to be placed on the agenda for the August 5 city council meeting, and Ms. Danielson confirmed that she added the request to the August agenda as a "public comments" item. (Doc. 18, p. 7, ¶¶ 42–44). Ms. Perry informed Ms. Danielson that she would not attend the meeting but would watch the meeting on YouTube. (Doc. 18, p. 7, ¶ 45). Ms. Danielson and Ms. Perry discussed whether Irondale's municipal code required physical attendance to present requests. (Doc. 18, p. 7, ¶¶ 46–47). Unable to resolve the issue, "[Ms.] Danielson offered another date for the meeting and [Ms. Perry] declined." (Doc. 18, p. 7, ¶ 48).

Ms. Perry watched the August 5 meeting on YouTube. (Doc. 18, p. 7, 15 48–49, 53). At the meeting, Irondale denied Ms. Perry's written proposal, partly due to how it was written. (Doc. 18, p. 8, ¶ 49). At the meeting, the City issued a proclamation to another business for its sale of hamburgers. (Doc. 18, p. 8, ¶ 50). Ms. Perry asserts that the city wanted her to attend the August 5 meeting in person to humiliate her by denying her service agreement request and then making her

5

watch the sort of celebratory proclamation that the city had denied her daughter. (Doc. 18, p. 8, ¶ 51).

On August 16, 2025, Ms. Perry renewed her request for a "service agreement," this time asking for $63,000.79 "due to plaintiff having more of an accurate account of students that had enrolled" in Irondale schools. (Doc. 18, p. 8, ¶¶ 54–55). The defendants did not respond to this request or Ms. Perry's follow-up messages. (Doc. 18, p. 8, ¶¶ 57–59).

"By September 2025, [Ms. Perry] had achieved significant local and national success with her book, The Brave Little Panther, receiving multiple accolades, including public awards, billboard recognition, placement in Jefferson County libraries, Birmingham Parent Magazine full cover, and placement []and book signing at the Birmingham-Shuttlesworth International Airport." (Doc. 18, pp. 8–9, ¶ 61). Ms. Perry requested a proclamation for her book at the Irondale public library's opening. (Doc. 18, p. 9, ¶ 62). Irondale did not respond. (Doc. 18, p. 9, ¶ 62).

On October 15, 2025, Ms. Perry submitted a bar complaint against Ms. Danielson. (Doc. 18, p. 10, ¶¶ 76–77). The Alabama State Bar denied this complaint and Ms. Perry's subsequent request for reconsideration. (Doc. 18, pp. 10–11, ¶¶ 77–89).

In November 2025, "as [Ms. Perry's] daughter's 21st birthday was approaching," Ms. Perry again requested a military and birthday proclamation for

6

her daughter as well as an apology letter. (Doc. 18, p. 9, ¶ 63). Ms. Danielson denied Ms. Perry's request without addressing its substance, instead referencing "unrelated prior correspondence" and "previous denial[s]" related to Ms. Perry's book and non-profit. (Doc. 18, p. 9, ¶¶ 64–65). Ms. Perry told Ms. Danielson "that this [request] was not book or non-profit related," but Ms. Danielson still did not respond. (Doc. 18, p. 9, ¶ 65). In the same email chain, Councilman Sims "responded dismissively and requested [Ms. Perry's] daughter's direct contact information," which Ms. Perry refused to give because she "and her daughter maintain an agreement that all external communications be directed to Plaintiff due to military scheduling constraints." (Doc. 18, p. 9, ¶¶ 66–67). Councilman Sims found Ms. Perry's daughter's contact info and contacted Ms. Perry's daughter. (Doc. 18, p. 9, ¶ 68). Ms. Perry sent a cease-and-desist letter. (Doc. 18, p. 9, ¶ 69).

Ms. Perry alleges that she copied James D. Stewart, Jr., the mayor of Irondale, on her communications with Mr. Sims and Ms. Danielson, yet Mayor Stewart did not respond or supervise Mr. Sims or Ms. Danielson. (Doc. 18, pp. 2–3, 6, 8–9, 12–13, ¶¶ 31, 59, 62, 74).

On December 1, 2025, Ms. Perry filed this action. (Doc. 1). The Clerk of Court randomly assigned the case to Chief Magistrate Judge John H. England, III. On December 19, 2025, Judge England dismissed Ms. Perry's original complaint and instructed her to replead. (Doc. 5). Judge England described deficiencies in Ms.

7

Perry's complaint and provided guidance for repleading.  (Doc. 5).

On December 29, 2025, Ms. Perry amended her complaint.  (Doc. 6).  On January 6, 2026, Judge England dismissed Ms. Perry's amended complaint.  (Doc. 7).  Judge England explained that the amended complaint did not comply with the instructions in his order and did not state a valid claim for relief.  Judge England again instructed Ms. Perry to amend her complaint and advised Ms. Perry that "**[f]ailure to follow the instructions in the order to amend may result in the dismissal of some or all of Ms. Perry's claims without further notice**."  (Doc. 7, p. 3) (bold and underline in original).

On January 12, 2026, Ms. Perry filed a second amended complaint.  (Doc. 8).  Ms. Perry later filed a motion for a status conference.  (Doc. 9).

On February 18, 2026, Judge England entered a reassignment order.  (Doc. 10).  In the reassignment order, Judge England explained that Ms. Perry's second amended complaint did not comply with prior court orders and did not cure many of the deficiencies in her prior complaints.  Because Judge England lacked dispositive jurisdiction to close the case, he directed the Clerk of Court to reassign the case to a district judge.  (Doc. 5, p. 5).  After reassignment, Ms. Perry filed twenty-four motions or notices, (Docs. 12, 13, 14, 15, 16, 17, 20, 21, 22, 23, 25, 27, 29, 30, 31, 32, 34, 35, 36, 37, 38, 39, 40, 41), a third amended complaint, (Doc. 18), and a

petition for a writ of mandamus, (Doc. 19).[4]

In her second and third amended complaints, Ms. Perry has raised claims of First Amendment retaliation, violations of procedural due process, negligence, wantonness, tortious interference, intentional infliction of emotional distress, and breach of ministerial duties against Mr. Sims, Ms. Danielson, and Mayor Stewart. (Doc. 8, pp. 7–9; Doc. 18, pp. 11–16).

\*\*\*

Ms. Perry alleges that the defendants retaliated against her in violation of her First Amendment rights. (Doc. 18, pp. 11–12). She alleges her protected speech includes: (1) requests for proclamations, (2) requests for sponsorship and service agreements, and (3) criticism of Irondale. (Doc. 18, p. 11). Ms. Perry alleges five different kinds of retaliatory activity: "denial of [her] proclamation requests without [a] neutral explanation," denial of sponsorship and service agreements, shifting or selectively enforced procedural requirements, unresponsiveness, and contact with her daughter. (Doc. 18, p. 12).

To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that "(1) the plaintiff engaged in constitutionally protected speech, such

---

[4] The Court did not give Ms. Perry permission to file a third amended complaint. Under Rule 15, "[a] party may amend its pleading once as a matter of course" within certain time limits. Fed. R. Civ. P. 15. A plaintiff must obtain permission from a district court for additional amendments. Thus, Rule 15 provides an independent basis for rejecting Ms. Perry's third amended complaint.

9

as his right to petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1281 (11th Cir. 2025) (internal brackets omitted) (quoting *DeMartini v. Town of Gulf Stream,* 942 F.3d 1277, 1289 (11th Cir. 2019)).

Retaliatory conduct adversely affects protected speech if the conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bailey v. Wheeler*, 843 F.3d 473, 481 (11th Cir. 2016) (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236–43 (2009)).  For example, courts have found that arrest, criminal prosecution, use of force, or adverse employment actions (such as firing, transferring, or failing to promote a public employee) may qualify as retaliatory conduct.  *See, e.g.*, *Hall v. Merola*, 67 F.4th 1282, 1294 (11th Cir. 2023) (collecting cases).  A plaintiff must show more than "*de minimis* inconvenience to her exercise of First Amendment rights."  *Bennett*, 423 F.3d at 1252 (citation omitted).

Although not necessarily an absolute rule, a plaintiff generally cannot state a claim for retaliation based on a defendant official's speech. *Compare DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 n.8 (11th Cir. 2019) (citation omitted)

10

("[S]pecial concerns arise when an official's 'own First Amendment rights are implicated' in the commission of an alleged constitutional tort."), *Ziegler v. Martin Cnty. Sch. Dist.*, 831 F.3d 1309, 1317, 1327–28 (11th Cir. 2016) (finding no retaliation where student was summoned into dean's office so school officials could express their displeasure at student saying negative things to media about school, but school did not otherwise punish student), *and Benedek v. Adams*, 725 Fed. Appx. 755, 761 (11th Cir. 2018) (finding no retaliation where defendant stated to media that plaintiff's allegations were frivolous), *with Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 469, 478–83 (2022) (citations omitted) (noting that "[i]t may be . . . that government officials who reprimand or censure students, employees, or licensees may in some circumstances materially impair First Amendment freedoms," while finding that school board's formal censure of board member could not qualify as retaliation for board member's speech because the First Amendment "cannot be used as a weapon to silence other representatives seeking to" exercise their own First Amendment rights), *and Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1281–83 (11th Cir. 2025) (considering, in determining that plaintiff had adequately alleged retaliation, the public "humiliat[ion]" of "being ordered out of a meeting room by a chief of security and a police officer" in addition to "a credible threat of arrest" and accompanying use of force).

For causation, "[i]t is not enough to show that an official acted with a

11

retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) (emphasis in original) (citation omitted). In other words, "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Hartman v. Moore*, 547 U.S. 250, 260 (2006).[5] If the plaintiff complains of an action taken by a municipal council, the plaintiff must show that "a majority of the members of the [municipal council] acted with an unconstitutional, retaliatory motive," *Bates v. Islamorada, Vill. of Islands*, 243 Fed. Appx. 494, 496 (11th Cir. 2007), or at least that those who acted with retaliatory motives were the deciding votes. "Because producing direct evidence of an official's inner motivations is often not possible, [courts] have relied on circumstantial evidence to establish the causal link." *Huggins*, 151 F.4th at 1282. Although not dispositive, one circumstantial factor courts may consider is the temporal proximity between plaintiff's speech and the alleged retaliation. *Huggins*, 151 F.4th at 1282–83.

Here, each of the retaliatory acts Ms. Perry alleges fails to meet the second

---

[5] If the plaintiff alleges that the defendant retaliated by instituting legal proceedings against the plaintiff, the plaintiff must show that the defendant had no probable cause to take the action, a higher bar than but-for causation. *See, e.g.*, *DeMartini*, 942 F.3d at 1288–309 (extending rule previously applied in criminal settings to defendant town's filing of a civil lawsuit).

and/or third elements of a First Amendment retaliation claim, a sufficiently adverse action and causation.

For example, Ms. Perry has not linked her requests for Irondale to issue military and birthday proclamations for her daughter to an adverse action. For starters, because Ms. Perry has not alleged she engaged in protected activity prior to her first request for a proclamation, Irondale officials' first denial cannot be interpreted as a form of retaliation. Because Ms. Perry has not identified a relevant change in town policy between her first and second requests for a proclamation, no reasonable juror could find that Irondale would have granted Ms. Perry's second request for a proclamation but for Ms. Perry's First Amendment activities. Nor would a denial of a celebratory proclamation deter a person of ordinary firmness from exercising First Amendment rights. The same analysis applies to Ms. Perry's requests for a proclamation celebrating her authorship—denial of this sort of proclamation would not deter a person of ordinary firmness from exercising First Amendment rights. Thus, Ms. Perry has not stated a claim based on town officials' denial of her proclamation requests.

Ms. Perry's claim for retaliation based on Irondale's denial of sponsorship does not include plausible allegations of causation. Ms. Berry and Mr. Sims told Ms. Perry that Irondale could not sponsor her book signing because it was not in Irondale and was not the type of activity the town could fund. (Doc. 18, p. 6, ¶¶ 30,

13

32).  Ms. Perry has not alleged that this rationale was pretextual.  Ms. Perry has not given an example of Irondale deviating from this norm.

Ms. Perry cannot state a First Amendment retaliation claim based on the City's alleged "shifting or selectively enforced procedural requirements" for obtaining a service agreement with the city, (Doc. 18, p. 12), because she has not pleaded facts from which a factfinder could conclude that a procedural requirement was "shifting or selectively enforced."  Ms. Perry has not shown, for example, that the requirement that she submit a proposal before a city council meeting was unusual or unreasonable or that other citizens were not required to submit proposals before city council meetings or to attend the meetings to advocate for their proposals. Irondale's municipal code requires advance notice of proposals and contemplates in-person attendance:

> Any person, firm, partnership, corporation, association or other entity desiring to have the city council formally consider a matter or to address the city council at a regular or pre-council meeting must first make written request or application with the city clerk by 5:00 p.m. on the Tuesday preceding the city council meeting on the following Tuesday. The purpose of such written request or application is to provide members of the city council with advance notice of the presentation and then afford them the opportunity to study and investigate the matter prior to the meeting. The [president of the city council or other] presiding officer shall determine if a matter should be considered an agenda item or if it can be properly presented under public comments to the council.
> . . . .

> There may be allotted a maximum of 30 minutes, after council approval of the agenda, for any citizen or other party in interest to present comments to the council on any matter appearing on the agenda, subject to the discretion of the presiding officer. . . . Public comments shall be limited to two minutes per individual speaking.
>
> . . . .
>
> Comments of the public prior to adjournment is an opportunity for the public to inform the council of matters the public is concerned about, action desired and conditions or situations existing in the city of which the public feels the council should be aware and consider addressing. Public comments shall be limited to two minutes per individual speaking.

Irondale, Ala., Mun. Code. § 2-156(a), (f), (g) (Feb. 2026),

https://library.municode.com/al/irondale/codes/code_of_ordinances?nodeId=COO

R_CH2AD_ARTIVMACO_DIV2COME_S2-156AG.    In addition, Ms. Perry admits that Ms. Danielson offered to move consideration of Ms. Perry's proposal to a later city council meeting that Ms. Perry would be able to attend in-person; Ms. Perry refused.  (Doc. 18, p. 7, ¶ 48).  Accordingly, at most, Ms. Perry has pled a "*de minimis* inconvenience," not an action which would deter a person of ordinary firmness from exercising their First Amendment Rights.  *Bennett*, 423 F.3d at 1252.

Accordingly, Ms. Perry cannot show causation for her claim that the defendants retaliated against her by denying her service agreement proposal.  Ms. Perry's failure to follow Irondale's procedural requirements provided an independent, non-retaliatory reason for the denial.  Causation is also lacking because Ms. Perry has not pleaded that "a majority of the members of the [city council] acted

15

with an unconstitutional, retaliatory motive," *Bates*, 243 Fed. Appx. at 496, or at least that those who acted with alleged retaliatory motives were the deciding votes. Irondale has five city council members.    Irondale, Ala., Mun. Code. § 2-132 (Feb. 2026).  Mr. Sims is the only defendant who is a city council member.  Ms. Perry has not alleged that the four non-defendant city council members had retaliatory motives.  Thus, Ms. Perry cannot show that Mr. Sims's or the other defendants' actions caused the city council to deny her request.

Ms. Perry cannot base a First Amendment retaliation claim on defendant's unresponsiveness because unresponsiveness would not deter a person of ordinary firmness from exercising their First Amendment rights.  Similarly, Ms. Perry cannot base a First Amendment retaliation claim on defendants' contact with her daughter.  This contact would not deter a person of ordinary firmness from exercising their First Amendment rights.  In addition, finding a First Amendment violation in this circumstance would improperly restrict public officials' own First Amendment rights to say what they wish to whom they wish.

Accordingly, Ms. Perry has not pleaded a valid First Amendment retaliation claim.

The Court dismisses Ms. Perry's due process claim for the reasons stated in Judge England's prior orders. (Docs. 5, 7, 10).  Ms. Perry's third amended complaint has not cured the deficiencies identified by Judge England in the second amended

16

complaint. Ms. Perry's procedural due process claim fails because she has not shown that she had a constitutionally-protected property or liberty interest in receiving any of the items she requested from Irondale or the defendants.

The Court declines to exercise supplemental jurisdiction over Ms. Perry's state-law claims for negligence, wantonness, and breach of ministerial duty. Under 28 U.S.C 1367(c)(3), "the district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." The Court lacks original jurisdiction over Ms. Perry's negligence, wantonness, and breach of ministerial duty claims because these claims arise under state law, and Ms. Perry has not pled a basis for diversity jurisdiction under 28 U.S.C. § 1332.[6]

***

The Court denies as moot Ms. Perry's motions for status conferences and status updates, (Docs. 9, 13, 25), motion for clarification, (Doc. 12), motion to require notice of appearance by identified counsel, (Doc. 14), motion to withdraw consent to magistrate judge jurisdiction, (Doc. 15), motion for limited discovery and for issuance of subpoena duces tecum to the Alabama state bar, (Doc. 16), motion

---

[6] Under 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between[] (1) citizens of different states. . . ." Ms. Perry and the defendants appear to be citizens of Alabama.

17

to initiate service of process, (Doc. 17), motion for permission to file electronically using the CM/ECF system, (Doc. 20), motion to submit memorandum opinion and order pursuant to 28 U.S.C. § 1915(e)(2) and proposed order to facilitate service of process, (Doc. 22), motion for limited discovery and for issuance of subpoena duces tecum to the United States Air Force, (Doc. 23), motion requesting the court to proceed with service of process and to conclude pending preliminary matters, (Doc. 31), motion to supplement the record with exhibit index and exhibits, (Doc. 34), motion to supplement the record, (Doc. 36), motion to supplement record to support Count I federal retaliation, (Doc. 37), motion to supplement the record with an exhibit-claim correlation table and memorandum of law rebutting qualified immunity, state-agent immunity, and satisfying the ordinary firmness test, (Doc. 38), emergency motion for temporary restraining order and preliminary injunction, (Doc. 39), and motion regarding compliance with the court's reassignment order and amended complaint, (Doc. 40).  Although styled as a motion, Ms. Perry's "motion advising court of related appellate filing" does not ask the Court to take action and is thus a notice.  (Doc. 21).  Ms. Perry's "notice to the district court of appellate motions filed and request for immediate record entry" likewise does not ask the Court to take an action other than docketing the notice.  (Doc. 27).  Ms. Perry's request for a refund of PACER fees incurred to date, (Doc. 25, p. 2; Doc. 29), is denied because a plaintiff can prosecute their case without incurring PACER fees.

*Pro se* litigants receive one free electronic copy of filings and can view case information for free at courthouse public access terminals. Ms. Perry's "notice of clarification regarding filed amended complaint on March 4th, 2026 and statements in support of plausibility," (Doc. 30), and "memorandum of law regarding defendants' anticipated defenses to plaintiff's amended complaint," (Doc. 41), pertain to claims that the Court has addressed in this order.

***

Accordingly, the Court dismisses Ms. Perry's federal claims for failure to state a claim and for failure to follow court orders. The Court declines to exercise supplemental jurisdiction over Ms. Perry's state law claims. The Clerk of Court shall please TERM all pending motions and close this case. The Clerk of Court shall please mail a copy of this order to the mailing address Ms. Perry has provided.

**DONE** and **ORDERED** this August 3, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

19